# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF OKLAHOMA

SHERRAN J. WELLS, )
                              )
            Plaintiff, )
v.                        )     Case No. CIV-15-341-SPS
                              )
NANCY A. BERRYHILL, )
Acting Commissioner of the Social )
Security Administration,[1] )
                              )
            Defendant. )

## OPINION AND ORDER

The claimant Sherran J. Wells requests judicial review pursuant to 42 U.S.C. § 405(g) of the decision of the Commissioner of the Social Security Administration denying her application for benefits under the Social Security Act. She appeals the decision of the Commissioner and asserts that the Administrative Law Judge ("ALJ") erred in determining she was not disabled. For the reasons set forth below, the decision of the Commissioner is hereby REVERSED and the case remanded to the ALJ for further proceedings.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if h[er] physical or mental impairment or impairments are of

---

[1] On January 20, 2017, Nancy A. Berryhill became the Acting Commissioner of Social Security. In accordance with Fed. R. Civ. P. 25(d), Ms. Berryhill is substituted for Carolyn Colvin as the Defendant in this action.

such severity that [s]he is not only unable to do h[er] previous work but cannot, considering h[er] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" 42 U.S.C. § 423 (d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[2]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to two inquiries: 1) whether the decision was supported by substantial evidence, and 2) whether the correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997) [citation omitted]. The term "substantial evidence" requires "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). However, the Court may not reweigh the evidence nor substitute its discretion for that of the agency. *See Casias v. Secretary of*

---

[2] Step one requires the claimant to establish that she is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires the claimant to establish that she has a medically severe impairment (or combination of impairments) that significantly limits her ability to do basic work activities. *Id*. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity, or if her impairment is not medically severe, disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. pt. 404, subpt. P, app. 1. If the claimant suffers from a listed impairment (or impairments "medically equivalent" to one), she is determined to be disabled without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must establish that she lacks the residual functional capacity (RFC) to return to her past relevant work. The burden then shifts to the Commissioner to establish at step five that there is work existing in significant numbers in the national economy that the claimant can perform, taking into account her age, education, work experience and RFC. Disability benefits are denied if the Commissioner shows that the claimant's impairment does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

*Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the Court must review the record as a whole, and "[t]he substantiality of evidence must take into account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

## Claimant's Background

The claimant was born on Mach 4, 1965, and was forty-eight years old at the time of the administrative hearing (Tr. 34, 217). She completed the ninth grade and attended special education classes, and has previously worked as a certified nursing assistant (Tr. 26, 244). The claimant alleges she has been unable to work since January 17, 2009, due to back pain, headaches, depression, and anxiety (Tr. 244).

## Procedural History

On December 10, 2012, the claimant applied for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434, and for supplemental security income benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-85. Her applications were denied. ALJ James Bentley held an administrative hearing and determined the claimant was not disabled in a written decision dated February 19, 2014 (Tr. 17-28). The Appeals Council denied review, so the ALJ's written decision represents the final decision of the Commissioner for purposes of this appeal. *See* 20 C.F.R. §§ 404.981, 416.1481.

## Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation. He found that the claimant retained the residual functional capacity (RFC) to perform less than the full

range of sedentary work as defined in 20 C.F.R. §§ 404.1567(a) and 416.967(a), except that she was limited to simple tasks with routine supervision, could not perform repetitive bending or stooping, required a sit/stand option defined as a temporary change in position from sitting to standing and vice versa with no more than one change in position every half hour without leaving the workstation, and was limited to occasional contact with coworkers, supervisors, and the general public (Tr. 23). The ALJ concluded that although the claimant could not perform her past relevant work, she was nevertheless not disabled because there was work she could perform, *i. e.*, final assembler, document preparer, and table worker (Tr. 26-27).

**Review**

The claimant contends that the ALJ erred by failing to use correct legal standards to evaluate the evidence, namely two consultative examinations regarding the claimant's physical ability and mental status. The Court agrees, and the decision of the ALJ should be reversed and remanded.

The ALJ determined that the claimant had the severe impairments of chronic back pain, depression, and anxiety (Tr. 19). The relevant medical evidence reveals that the claimant experienced an on-the-job back injury on January 17, 2009, which led to an L5-S1 laminectomy with L5-S1 discectomy with bilateral lateral fusion L5-S1, with right iliac crest bone graft, posterior lumbar interbody fusion with allograft bone and Legacy posterior spinal instrumentation on January 5, 2010 (Tr. 461-462). Notes from her surgeon prior to the January 5, 2010 procedure state that there is a chance the claimant will remain symptomatic from the other disk levels and she could require hardware

removal down the road, and a subsequent hardware removal did occur on February 22, 2011 (Tr. 461-464). Following these procedures, the claimant continued to report pain and difficulty with movement, and was sent to both land and aquatic physical therapy. Reports from physical therapy indicate that the claimant's pain was not greatly reduced, and that she continued to report falls (Tr. 379-428). Notes from the claimant's surgeon indicate that on September 9, 2011, he did not believe he could do anything else for her and that she subjectively had not done well following the procedures (Tr. 432). He recommended a functional capacity evaluation, and that she had reached maximum medical improvements, with the belief that she could perform maximum lifting in the thirty-pound range, with repetitive lifting of fifteen pounds or less, and that she needed to avoid repetitive bending and stooping (Tr. 432).

On August 30, 2012, consultative examiner Kathleen Ward, Ph.D., conducted a mental status examination of the claimant (Tr. 480). Dr. Ward suspected the claimant engaged in stalling, and noted that her effort on the examination appeared to be "lackluster" (Tr. 481). She believed the claimant may be incompetent to handle any funds award, but noted again the claimant's lackluster effort on exam, and described the claimant as fairly defensive and hostile (Tr. 482). Dr. Ward stated that some depression may be noted but it was difficult to diagnose given the claimant's uncooperative attitude (Tr. 482).

Dr. Adel Malati conducted a Comprehensive Internal Medicine Examination of the claimant on September 19, 2012. His clinical impression of the claimant was: chronic back pain, status post back surgery x2, and history of asthma. He noted that the

claimant used a cane to enter and exit the office, and that with the cane she had a slow, steady gait with limping on the right lower extremity, and that without the cane she had a slow unsafe gait with limping on her right lower extremity (Tr. 487-488). He further noted that she was able to sit, stand, and lie down with moderate difficulty, and that she had a full range of motion in the hips, knees, and ankles, but that she had pain with range of motion of the back, and her flexion and extension were extremely limited (Tr. 488-489). Additionally, the claimant was unable to perform heel/toe walking, and straight leg raising test was negative to 90 degrees bilaterally (Tr. 488-492).

Dr. J. Marks-Snelling reviewed the claimant's record and on October 19, 2012 he found the claimant could perform sedentary work, with occasional postural limitations (Tr. 110). On February 22, 2013, Dr. Tom Shadid reviewed the record and the determined that the claimant had moderate limitations in three areas, and concluded that the claimant could perform simple and some complex tasks, relate to others on a superficial work basis, maintain attention and concentration for a two-hour period, and adapt to a work situation (Tr. 138).

At step two, the ALJ determined the claimant's severe impairments as listed above. Additionally at step two, he summarized much of the medical evidence, including Dr. Boone's surgical findings and procedures, Dr. Malati's consultative assessment (except that the ALJ failed to mention the claimant's limited back extension and flexion), and Dr. Ward's consultative exam. At step four, the ALJ thoroughly summarized the claimant's hearing testimony, as well as Dr. Boone's treatment notes. As to Dr. Boone's opinion, the ALJ gave it "some weight," as he repeatedly assigned the same limitations to

the claimant, but he found the exertional level endorsed by Dr. Boone to be "somewhat excessive" (Tr. 25). The ALJ stated that he "accepted" Dr. Marks-Snelling's reviewing opinion that the claimant could perform sedentary work, except that he found the limitation to only two hours of standing and walking to be excessive and gave that little weight, instead allowing a sit/stand option as described above (Tr. 25). He gave great weight to the state reviewing physician opinion regarding the claimant's mental RFC (Tr. 25). The ALJ did not return to the consultative examiner opinions at step four, nor did he provide an analysis of them at any step of the opinion.

Here, the ALJ failed to properly assess the evidence regarding the claimant's physical impairments. "An ALJ must evaluate every medical opinion in the record, although the weight given each opinion will vary according to the relationship between the disability claimant and the medical professional. . . . An ALJ must also consider a series of specific factors in determining what weight to give any medical opinion." *Hamlin v. Barnhart*, 365 F.3d 1208, 1215 (10th Cir. 2004) [internal citation omitted] [emphasis added], *citing Goatcher v. United States Department of Health & Human Services*, 52 F.3d 288, 290 (10th Cir. 1995). The pertinent factors include the following: (i) the length of the treatment relationship and the frequency of examination; (ii) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (iii) the degree to which the physician's opinion is supported by relevant evidence; (iv) consistency between the opinion and the record as a whole; (v) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (vi) other factors brought to the ALJ's attention which tend to

support or contradict the opinion. *See Watkins v. Barnhart*, 350 F.3d 1297, 1300-1301 (10th Cir. 2003) [quotation marks omitted], *citing Drapeau v. Massanari*, 255 F.3d 1211, 1213 (10th Cir. 2001). In this case, at step two the ALJ summarized much of Dr. Malati's assessment and noted where she had full range of motion but not where she had limited range of motion. Furthermore, he noted Dr. Malati's statements regarding the claimant's use of a cane at step two, as well as the claimant's testimony regarding her use of a cane, but made no findings regarding her use of a cane in relation to the RFC although he did ask her at the administrative hearing if she had a prescription for her cane. *See Staples v Astrue*, 329 Fed. Appx. 189, 191-192 (10th Cir. 2009) ("The standard described in SSR 96-9p does not require that the claimant have a prescription for the assistive device in order for that device to be medically relevant to the calculation of [his] RFC. Instead, [he] only needs to present medical documentation establishing the need for the device. The ALJ therefore erred in relying on [the claimant's] lack of a prescription for a cane."). *See also* Soc. Sec. Rul. 96-9p, 1996 WL 374185, at *7 (July 2, 1996). In fact, despite evidence that the claimant used a cane and the state reviewing physician's finding that the claimant should be limited to no more than two hours of standing and walking, the ALJ refused to accept any of this evidence. This indicates a deliberate attempt to pick and choose among the evidence to use only favorable portions in support of the ALJ's opinion. *See Hardman v. Barnhart*, 362 F.3d 676, 681 (10th Cir. 2004) (noting that the ALJ may not "pick and choose among medical reports, using portions of evidence favorable to his position while ignoring other evidence."), *citing Switzer v. Heckler*, 742 F.2d 382, 385-86 (7th Cir. 1984) ("Th[e] report is uncontradicted

-8-

and the Secretary's attempt to use only the portions favorable to her position, while ignoring other parts, is improper.") [citations omitted]. The Commissioner attempts to salvage the ALJ's findings by stating that the ALJ was required to explain why he rejects portions of a physician's opinions, but no explanation is required with regard to a physician's observations. Aside from the fact that this distinction is not part of the case law and strains reasoning, this arguments ignores the fact that the ALJ failed in his duty to perform the proper analysis of all opinions in the record, including the opinions of both Dr. Malati and Dr. Ward, at step four.

The claimant also asserts that the ALJ's errors regarding these opinions affected his credibility analysis. Since the ALJ's opinion was issued, the Social Security Administration eliminated the term "credibility" in Soc. Sec. Rul. 16-3p, 2016 WL 1119029 (Mar. 16, 2016), and has provided new guidance for evaluating statements pertaining to intensity, persistence, and limiting effects of symptoms in disability claims. The claimant asserts that even though it was issued after the ALJ's decision, remand is required because the Tenth Circuit has held that, "Generally, if an agency makes a policy change during the pendency of a claimant's appeal, the reviewing court should remand for the agency to determine whether the new policy affects its prior decision." *Frantz v. Astrue*, 509 F.3d 1299, 1302 (10th Cir. 2007) (*quoting Sloan v. Astrue*, 499 F.3d 883, 889 (8th Cir. 2007). Here, it is apparent from the ALJ's opinion that he failed to conduct the proper analysis under either standard. Moreover, because the record does not reflect how the ALJ would have evaluated the claimant's subjective statements under Soc. Sec. Rul.

16-3p,³ the decision should also be reversed and remanded for consideration of the evidence and testimony in light of the new policy.

Because the ALJ failed to properly conduct an analysis of the evidence and the claimant's RFC, the decision of the Commissioner should be reversed and the case remanded to the ALJ for further analysis. If such analysis results in any adjustments to the claimant's RFC, the ALJ should re-determine what work the claimant can perform, if any, and ultimately whether he is disabled.

## Conclusion

In summary, the Court FINDS that correct legal standards were not applied by the ALJ, and the Commissioner's decision is therefore not supported by substantial evidence. The Commissioner's decision is accordingly REVERSED and the case REMANDED for further proceedings consistent herewith.

**DATED** this 21st day of March, 2017.

_____
**STEVEN P. SHREDER**
**UNITED STATES MAGISTRATE JUDGE**

---

³ While it is arguable that the evidence cited by the ALJ in support of his credibility determination would likewise have satisfied Soc. Sec. Rul. 16-3p, thus obviating the need for reversal and remand, *see, e. g., Wellenstein v. Colvin,* 2015 WL 5734438, at *11 (N.D. Iowa Sept. 30, 2015) (noting that the Court of Appeals for the Eighth Circuit denied remand for consideration of a new social security ruling upon finding that "although the policy changed during the pendency of the case, the policy did not affect the case."), *citing Van Vickle v. Astrue,* 539 F.3d 825, 829 n.6 (8th Cir. 2008), the undersigned Magistrate Judge finds that any re-evaluation of the evidence in light of the new standard is not for this court to make on review but rather for the ALJ to consider in the first instance.